IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANNSAVON MARIE ARMSTEAD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, Commissioner )<br>Social Security Administration )<br>) | Civil Action No. WGC-09-2734 |

**MEMORANDUM OPINION**

Plaintiff Annsavon Marie Armstead ("Plaintiff" or "Ms. Armstead") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* Document Nos. 6-8.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (Document No. 11) and Defendant's Motion for Summary Judgment (Document No. 16). No hearing is deemed necessary, s*ee* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

1. **Background**.

On May 30, 2006 Ms. Armstead filed an application for SSI alleging a disability onset date of January 31, 2000. R. at 58-60. On the *Disability Report – Adult – Form SSA-3368* Ms. Armstead declared that manic depression, bipolar disorder, heroin and alcohol abuse limit her

---

[1] This case was subsequently reassigned to the undersigned.

1

ability to work.  R. at 82.  Her application was denied initially on August 10, 2006.  R. at 30-33.  On August 16, 2006 the Social Security Administration received Ms. Armstead's request for reconsideration.  R. at 34.  On December 22, 2006 the application was denied again.  R. at 35-36.  Ms. Armstead requested a hearing before an Administrative Law Judge ("ALJ").  R. at 37-39.  On November 13, 2008 an ALJ convened a hearing.  R. at 208-33.  At the hearing Ms. Armstead's counsel, Vincent Piazza, informed the ALJ that Ms. Armstead amended the alleged onset date of her disability to June 11, 2008.  R. at 211.  This amendment of the alleged onset date is further documented on the *Request for Alleged Amended Onset Date* form signed by Ms. Armstead and her counsel on November 13, 2008.  R. at 57.  During the hearing the ALJ obtained testimony from Ms. Armstead and a vocational expert ("VE").  In the February 4, 2009 decision, the ALJ found Ms. Armstead was not disabled within the meaning of the Act.  R. at 24.

The following day, February 5, 2009, Ms. Armstead requested a review of the ALJ's hearing decision.  R. at 11-12.  On September 11, 2009 the Appeals Council, finding no reason under the rules to review the ALJ's decision, denied Ms. Armstead's request for review, R. at 5-7, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Armstead's claim for SSI using the sequential evaluation process set forth in 20 C.F.R. § 416.920.  Ms. Armstead bears the burden of demonstrating her disability as to the first four steps.  At step five the burden shifts to the Commissioner.  If Ms. Armstead's claim fails at any step of the process, the ALJ does not advance to the subsequent steps.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At step one the ALJ found Ms. Armstead has not engaged in substantial gainful activity since June 11, 2008, the amended alleged onset date.  R. at 17.

At step two the ALJ found Ms. Armstead had two medically determinable impairments, specifically, major depressive order and a history of substance abuse. R. at 18. The ALJ reviewed Ms. Armstead's medical record. When Ms. Armstead abuses alcohol and drugs, the medical record reflects she has significant psychiatric limitations. Ms. Armstead started a Methadone treatment program on June 11, 2008, the same date as her amended alleged onset date of disability. She has not used drugs or alcohol since June 11, 2008. Except for the session on November 3, 2008, Ms. Armstead has not reported experiencing any hallucinations, suicidal ideations, homicidal ideations or psychomotor agitation.

In accordance with 20 C.F.R. § 416.920a, the ALJ followed a special technique to evaluate the severity of Ms. Armstead's mental impairments, *i.e.,* major depressive disorder and substance addiction disorder. The four broad functional areas (activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation) are known as the "B" criteria for most of the mental disorders listed in Appendix 1. The ALJ determined Ms. Armstead has a *mild* limitation of activities of daily living, a *mild* limitation of social functioning, a *mild* limitation of concentration, persistence or pace, and *no* episodes of decompensation which have been of extended duration. R. at 23-24. "Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 416.920a(d)(1))." R. at 24.

The ALJ found Ms. Armstead's medically determinable mental impairment of major depression does not significantly limit (nor is expected to significantly limit) Ms. Armstead's ability to perform basic work-related activities for 12 consecutive months. Similarly, the ALJ determined, since June 11, 2008, there has not been a significant limitation in Ms. Armstead's

ability in performing basic work activities attributable to her medically determinable mental impairment of substance addiction disorder (drug and alcohol abuse). At step two the ALJ found Ms. Armstead's major depression is a non-severe impairment. R. at 21. He also found her drug and alcohol abuse is a non-severe impairment. R. at 22.[2]

Having found as non-severe impairments Ms. Armstead's major depressive disorder and history of substance abuse, in accordance with the sequential evaluation process outlined in 20 C.F.R. § 416.920(a)(4)(ii), the ALJ found Ms. Armstead is not disabled. "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c) (2008).

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This Court cannot try the case *de novo* or

---

[2] Ms. Armstead also alleged symptoms of hepatitis C. No evidence in her medical record supported this allegation. "Under the circumstances, the undersigned must conclude that the claimant's allegations of hepatitis C do not give rise to a medically determinable impairment." R. at 22. Ms. Armstead does not raise any objection about this finding.

resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

4. **<u>Discussion</u>**.

Ms. Armstead asserts four distinct grounds for awarding her judgment or remanding the case to the Commissioner. The Court reviews each argument below.

A. *Alleged Failure to Accord Controlling Weight to Dr. Jeffrey Hsu*

Dr. Jeffrey Hsu is Ms. Armstead's treating psychiatrist. He began seeing her as his patient on June 11, 2008 and last saw her on November 12, 2008, the date he completed the *Medical Assessment Report*. R. at 188. The Court notes, based on Ms. Armstead's amended alleged onset date of June 11, 2008, Dr. Hsu is the *only* treating source since the date of onset.

The ALJ summarized the medical record concerning Dr. Hsu's treatment of Ms. Armstead.

> Treatment notes from Jeffrey Hsu, M.D., dated June 30, 2008, show the claimant was "just started" on Paxil and Seroquel, psychotropic medications. The claimant reported that sleep and appetite were fair. Dr. Hsu noted that the claimant was alert and cooperative; with good eye contact; affect was full range; and normal rate and volume of speech. The claimant denied suicidal and homicidal ideations. Dr. Hsu noted no psychomotor agitation. On August 27, 2008, Dr. Hsu noted that the claimant's insight and judgment were fair; she was alert and cooperative. The claimant denied hallucinations. On September 10, 2008, the record shows the claimant was alert and cooperative; she denied hallucinations and suicidal and homicidal ideations (Exhibit B-5F). Treatment notes from Dr. Hsu dated September 24, 2008, show the claimant was alert and cooperative; she denied hallucinations and suicidal and homicidal ideations. On October 13, 2008, the claimant reported that her sleep and appetite were fair. The claimant was alert and cooperative; she denied hallucinations. On November 3, 2008, the claimant presented to Dr. Hsu with complaints of lightheadedness, dizziness, hearing voices, banging her head on the wall, and suicidal ideations. Ms. Armstead denied drug and alcohol use. The claimant did report that she was pursuing social security income payment due to disability; she has been denied

> nine times. On mental status examination, Dr. Hsu reports the claimant is alert and cooperative. The claimant reported that she stopped using Paxil in June 2008. The record shows the claimant had Dr. Hsu sign a paper in connection with her Social Security claim. Throughout the treatment notes, Dr. Hsu has diagnosed major depressive disorder, personality disorder and bipolar disorder. On November 3, 2008, Dr. Hsu wrote a diagnosis of bipolar disorder but then marked through it; he wrote a diagnosis of major depressive disorder (Exhibit B-9F).

R. at 21.

The ALJ then made certain findings after reviewing Ms. Armstead's complete medical record.

> The undersigned finds that the claimant has significant psychiatric limitations when abusing alcohol, cocaine, and heroin (Exhibits 8 and 11 in the prior folder; and B-2F). The record shows the claimant has no significant psychiatric limitations when she is abstinent from drugs and alcohol (Exhibits B-5F, B-7F, and B-9F). Since the amended alleged onset date of June 11, 2008 (the date the claimant started the Methadone treatment program), the record shows she experiences no hallucinations, suicidal ideations, homicidal ideations, and psychomotor agitation (Exhibits B-5F and B-9F). However, on November 3, 2008, the claimant presented to Dr. Hsu with allegations of extreme symptoms (such as hallucinations, suicidal thoughts, banging her head, and lightheadedness); she denied use of drug and alcohol. Ms. Armstead reported that she was pursuing Social Security benefits. Dr. Hsu reported that the claimant is alert and cooperative with multiple somatic complaints (Exhibit B-9F, page 2). The undersigned finds that the claimant presented with the same extreme symptoms when she previously filed for benefits; during that time, she was abusing cocaine, heroin, and alcohol (Exhibit[s] 8 and 11).

*Id.*

Later in the decision the ALJ discusses the *Medical Assessment Report* completed by Dr. Hsu.

> On November 12, 2008, Dr. Hsu noted that the claimant is not currently abusing illegal drugs or alcohol (Exhibit B-8F, page 5). Dr. Hsu opined the claimant would experience a substantial loss of

> ability to understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. Dr. Hsu opined the claimant has marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties maintaining concentration, persistence, and pace; repeated episodes of decompensation; and she would be absent from work a minimum of 30 days out of a work year (Exhibit B-8F, pages 1 to 3). Dr. Hsu's opinion is inconsistent with his own treatment notes and is not supported with psychological or psychiatric testing. The undersigned gives little weight to Dr. Hsu's opinion, as inconsistent with other evidence of record. Furthermore, Dr. Hsu appears to rely on the claimant's subjective complaints and, as noted above, there is a question as to the credibility of those alleged symptoms. The undersigned has considered and evaluated all evidence of record, including later treatment records and the claimant's hearing testimony.

R. at 23.

A treating source's opinion is not automatically entitled to *controlling weight*. To be accorded such weight, four factors must be established. *See Social Security Ruling (SSR) 96-2p*[3,] 1996 WL 374188 at *2 (Jul. 2, 1996). First, the opinion must come from a *treating source*. "[T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2) (2008). It is undisputed that Dr. Hsu was Ms. Armstead's treating psychiatrist.

Second, the opinion must be a *medical opinion*. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and

---

3 Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions.

7

prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2) (2008). It is undisputed that the November 12, 2008 *Medical Assessment Report* form completed by Dr. Hsu is a medical opinion.

Third, the treating source's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3) (2008).

In the brief in support of her motion for summary judgment, Plaintiff argues Dr. Hsu's November 12, 2008 opinion is well-supported by his treatment notes. Plaintiff notes on June 30, 2008 Ms. Armstead reported feeling like she cannot focus or remember. On August 27, 2008 Dr. Hsu noted Ms. Armstead had racing thoughts and poor concentration. On September 10, 2008 Dr. Hsu noted Ms. Armstead's mood was depressed and she had racing thoughts. On September 24, 2008 Ms. Armstead reported her sleep and appetite were poor and on October 13, 2008 her mood was anxious. *See* Br. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Br.") at 15. The Court notes that Ms. Armstead, a woman with a long history of substance abuse, was participating in a Methadone treatment program, attempting to cease her abuse of drugs and alcohol.

What the ALJ found critical from Dr. Hsu's treatment notes from June 30, 2008 to October 10, 2008, despite Ms. Armstead's subjective complaints or observed behavior, was that Dr. Hsu *consistently found* no suicidal ideations, no homicidal ideations and no hallucinations. *See* R. at 168-70, 195. It was only on November 3, 2008 (the day Ms. Armstead disclosed she was pursuing Social Security benefits) that Ms. Armstead told Dr. Hsu's assistant that she was feeling dizzy, lightheaded, hearing voices inside her head, a man is telling her to hurt herself.

Ms. Armstead further reported that she has been banging her head on the walls and wanted to cut her wrists. Ms. Armstead also told Dr. Hsu's assistant that she was depressed and suicidal. R. at 193. Dr. Hsu's assistant noted under "objective" that the "client suffers from Hallucination and delusion, feeling distraught[.] [L]ightheaded is a result of 'banging head.'" *Id.* When Dr. Hsu met with Ms. Armstead that same day, he noted Ms. Armstead was very dramatic with multiple somatic complaints though she denied using any drugs and alcohol. Dr. Hsu recorded that Ms. Armstead's mood was depressed, suicidal, crying but she had no plans. R. at 194.

The ALJ correctly found that Dr. Hsu's November 12, 2008 opinion as expressed on the *Medical Assessment Report* was not well-supported and moreover was inconsistent with Dr. Hsu's own treatment notes. As the Commissioner argues, "[t]he ALJ properly concluded that Dr. Hsu's opinion was not an accurate reflection of Armstead's mental symptoms and was instead based primarily on Armstead's exaggerated subjective complaints." Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") at 11. Dr. Hsu's medical opinion does not satisfy the third requirement to be accorded *controlling weight*. On this basis alone the ALJ would be prohibited from giving *controlling weight* to Dr. Hsu's opinion. The Court nonetheless will consider the final requirement.

The fourth and final requirement is, even if a treating source's medical opinion is well-supported by clinical and laboratory findings, the treating source's medical opinion must not be inconsistent with other substantial evidence in the claimant's record. *SSR 96-2p*, 1996 WL 374188, at *2. "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(d)(4) (2008).

Dr. Hsu asserted that his medical opinion about Ms. Armstead's mental limitations, as reflected in the November 12, 2008 *Medical Assessment Report*, initially existed on *January 1*,

*1995*. R. at 191. It is undisputed that Dr. Hsu began treating Ms. Armstead on *June 11, 2008*. R. at 188. As the Commissioner notes in his memorandum, Dr. Hsu opines about Ms. Armstead's medical condition thirteen years before he began treating her, "a time period on which he had no basis to opine[.]" Def.'s Mem. at 12. Since Dr. Hsu relies on Ms. Armstead's *pre-June 11, 2008* medical records, and, since the day Dr. Hsu recorded this opinion Ms. Armstead's alleged onset date of disability was *January 31, 2000*, it is not inappropriate for the ALJ, or this Court, to review medical records from January 31, 2000 to June 10, 2008 to determine if Dr. Hsu's assessment is accurate.

The most recent medical treatment Ms. Armstead received *before* starting the Methadone treatment program and seeing Dr. Hsu was a series of sessions (Outpatient Psychiatric Services) with Robert Cumming, M.D., a psychiatrist associated with Union Memorial Hospital. Ms. Armstead saw Dr. Cumming on April 25, May 2, 9, 16, 23, 30, June 13 and 20, 2006. R. at 178-82, 184-87. At each session Dr. Cumming evaluated Ms. Armstead's mental status. On each occasion he found Ms. Armstead was alert, oriented (times three), with no suicidal ideations and no homicidal ideations. Her mood was stable and she denied any psychosis.

Between April 1 and 6, 2006 Ms. Armstead was admitted to John Hopkins Hospital. Ms. Armstead reported the following while in the Emergency Room.

> [T]he patient initially stated that she had recently overdosed on heroin and cocaine as a suicide attempt, but later recanted, and stated that she only wished to be admitted to a detoxification program, as her current life was "not worth living." She endorsed several weeks of irritability, poor sleep, decreased appetite, increased frustration about her drug use. The patient was, however, distinctly hopeful that she could get better. In the context of cocaine use, she also stated that she heard derogatory male voices which were described as coming from "behind her head." In the past, these have been treated successfully with Seroquel.

R. at 147.

On the morning of April 3, 2006 Ms. Armstead was evaluated by the treatment team.

> [T]he patient was in bed and was grudgingly cooperative. She displayed poor eye contact and was irritable at having so many "people in my face." Her speech was of regular rate, rhythm, volume, and tone, and her thoughts were goal directed. Her mood was described as "4 out of 10," and was assessed as irritable with a constricted range of affect. The patient denied any passive death wishes, suicidal ideation, or homicidal ideation. She denied any hallucinations, delusions, obsessions, or compulsions.

*Id.*

The treatment team identified Ms. Armstead as exhibiting three psychiatric problems: 1. Adjustment disorder with disturbance in mood and conduct, 2. Opiate dependence, and 3. Alcohol dependence. *See* R. at 147-49. For the first psychiatric problem the discharge summary states

> The patient was admitted to the Meyer 3 General Psychiatry Unit. During the early part of her admission, the patient's mood had already improved and she appeared to be euthymic, although she remained irritable. Given the presence of a partial syndrome and no history of mood symptoms prior to her drug use, it was assumed that her low mood was situational and would improve with observation and detoxification alone. This appeared to be the case, as throughout this hospitalization, the patient's mood improved considerably. She no longer had any suicidal thoughts and no longer complained of auditory hallucinations.

R. at 147-48.

When she was discharged, the diagnosis under Axis I, listed

> Adjustment disorder with disturbance of mood and conduct.
> Heroin, cocaine, and alcohol dependence.
> Substance-induced psychotic symptoms, resolved.

R. at 150.

Having reviewed Ms. Armstead's medical records between January 31, 2000 and June

11

10, 2008, the time period included in Ms. Armstead's original alleged onset date and part of the history considered by Dr. Hsu in opining that Ms. Armstead's mental limitations initially existed on January 1, 1995, the Court finds the ALJ properly did not accord *controlling weight* to Dr. Hsu's opinion. Dr. Hsu's November 12, 2008 medical opinion is inconsistent with other substantial evidence in Ms. Armstead's record.

B.     *Alleged Error at Step Two*

Plaintiff contends the ALJ completely discounted the records of treating psychiatrists Dr. Hsu and Dr. Cumming, discounted Ms. Armstead's records of psychiatric hospitalizations, and relied exclusively upon a non-treating, non-examining source's determination that Ms. Armstead has no work-related limitations. Pl.'s Br. at 16-17. The Commissioner accurately notes "[w]ith the exception of the November 2008 treatment note, the ALJ did not discount Dr. Hsu's and Dr. Cumming[]'s treatment notes or the two hospitalizations. . . The ALJ also noted that the two hospitalizations showed that Armstead's extreme symptoms and limitations stemmed from her drug and alcohol abuse, not her mental impairments." Def.'s Mem. at 13-14 (citations omitted).

Plaintiff further argues that the ALJ failed to consider that Ms. Armstead, though 38 years old, "has never had any substantial employment and has always lived off of financial aid from Social Services." Pl.'s Br. at 17. An individual's work history is not determinative of whether a claimant is able to perform basic work activities. "When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b) (2008). Examples include walking, standing, lifting, pushing, pulling; seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers and typical work situations; and dealing with changes in a routine work setting. *Id.* § 416.921(b)(1) – (6) (2008). Except for Dr.

12

Hsu's November 12, 2008 medical opinion, no treating psychiatrist opined Ms. Armstead is unable to perform basic work activities. "[E]ven if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe *would not prevent him or her from engaging in [substantial gainful activity]*." SSR 85-28[4,] 1985 WL 56856, at *3 (1985) (emphasis added). The Court finds no error by the ALJ at step two.

## C.     Alleged Error at Step Three

Plaintiff contends at step three the ALJ must consider whether Ms. Armstead's impairments meet a Listing, or is equivalent to a Listing. Plaintiff notes the ALJ never addressed step three of the sequential evaluation process. "It was blatant error for the ALJ to completely skip this step of sequential evaluation." Pl.'s Br. at 18.

If a determination is made at step two that an impairment is not severe, an ALJ is *not* supposed to proceed to step three. *See* 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."), (a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

Moreover, in determining whether Ms. Armstead's major depressive disorder and history of substance abuse are *severe* impairments, because these impairments are *mental impairments*, the ALJ had to evaluate the severity of these mental impairments *at step two* by following a special technique. *See* 20 C.F.R. § 416.920a (2008).

> The first functional area is activities of daily living. In this area, the claimant has mild limitation. On November 6, 2001, the

---

4  Titles II and XVI: Medical impairments that are not severe.

> claimant reported that her daily activities include shopping with a friend, watching television, cooking, cleaning, and visiting her children at her mother's three or four times a month. At the hearing, Ms. Armstead testified that her daily activities include attending group sessions five days a week; dating a friend; and shopping with her mother.
>
> The next functional area is social functioning. In this area, the claimant has mild limitation. At the hearing, Ms. Armstead stated she dates a friend. Treatment notes show the claimant was alert, cooperative, with good eye contact. On the Disability Report-Field Office, the record shows that claimant had no difficulty with talking, answering, and understanding during the initial interview.
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. Treatment notes show the claimant is alert and oriented, with stable mood. On the Disability Report-Field Office, the record shows the claimant had no difficulty in understanding, concentrating, and answering during the initial interview.
>
> The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. Since the amended alleged onset date of June 11, 2008, there is no evidence to indicate the claimant has experienced any episodes of decompensation of extended duration.

R. at 23-24 (citations omitted).

"After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). If we rate the degree of your limitation in the first three functional areas as 'none' or mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe. . . ." 20 C.F.R. § 416.920a(d)(1) (2008). The Court finds no error by the ALJ.

D.  *Alleged Lack of Substantial Evidence; Alleged Failure to Address Steps Four and Five*

Contrary to the assertions of Plaintiff the Court finds substantial evidence supports the ALJ's decision. Furthermore, because the ALJ determined at the step two that Ms. Armstead's

mental impairments were *not severe*, the ALJ **would not proceed** to steps four and five of the sequential evaluation process. "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. *We will not consider your age, education, and work experience*. 20 C.F.R. § 416.920(c) (2008) (emphasis added). The Court finds no error by the ALJ.

E.   *History of Substance Abuse*

In his memorandum the Commissioner notes Plaintiff argues that the ALJ failed to consider non-medical evidence of her disability such as a lack of work experience and inability to take care of her children. The Commissioner asserts this "disability" stems from Ms. Armstead's abuse of drugs and alcohol. "A claimant who used drugs or alcohol is not entitled to benefits if the claimant could have worked in the absence of the drug or alcohol use. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(b)(2)." Def.'s Mem. at 14.

In his decision the ALJ **never** refers directly to 20 C.F.R. § 416.935(b). That section states

> (b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.* (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

15

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

In the decision the ALJ, *in fact*, found Ms. Armstead's major depressive disorder was not disabling because her history of substance abuse is a contributing factor material to the determination of disability.

> The undersigned finds that the claimant has significant psychiatric limitations when abusing alcohol, cocaine, and heroin. The record shows the claimant has no significant psychiatric limitations when she is abstinent from drugs and alcohol. Since the amended alleged onset date of June 11, 2008 (the date the claimant started the Methadone treatment program), the record shows she experiences no hallucinations, suicidal ideations, homicidal ideations, and psychomotor agitation. However, on November 3, 2008, the claimant presented to Dr. Hsu with allegations of extreme symptoms (such as hallucinations, suicidal thoughts, banging her head, and lightheadedness); she denied use of drug and alcohol. Ms. Armstead reported that she was pursuing Social Security benefits. Dr. Hsu reported that the claimant is alert and cooperative with multiple somatic complaints. The undersigned finds that the claimant presented with the same extreme symptoms when she previously filed for benefits; during that time, she was abusing cocaine, heroin, and alcohol.

R. at 21 (citations omitted).

*F.     Duration Requirement*

In his brief the Commissioner notes Plaintiff must demonstrate a severe mental impairment lasting for twelve (12) consecutive months. Def.'s Mem. at 8. "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 416.909 (2008). Ms. Armstead *voluntarily* amended the alleged onset date of her disability from January 31, 2000 to *June 11, 2008*. R. at 57, 211. The ALJ inquired about this amendment

16

during the hearing.

> ALJ: And the claimant, you amended the onset date as 6/11/08 when she, is that when she started with him or that's the date of his reports?
>
> ATTY: That's when she started with him and he expresses opinion from the time he first treated her.
>
> ALJ: Okay and I guess he's speculating that's going to last for 12 continuous months?
>
> ATTY: I think the bipolar disorder Your Honor, even based on the limited record that we have, has lasted for at least 12 months or could be expected to last for 12 months.

R. at 212.

Dr. Hsu's November 12, 2008 medical opinion identifies when Ms. Armstead's mental limitations began. As noted *supra* the ALJ did not accord controlling weight to this opinion.

The Court notes Dr. Hsu's November 12, 2008 medical opinion does not indicate how long Ms. Armstead's mental impairments would last or could be expected to last. Plaintiff's disability began on June 11, 2008. Further, no evidence has been presented that her impairments would result in death. Ms. Armstead has failed to meet her burden at step two.

5. **Conclusion**.

Substantial evidence supports the decision that Ms. Armstead is not disabled. Accordingly, the Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

Date: <u>October 27, 2010</u>  _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE